# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT WEGNER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02389-SHL-atc |
| | ) | |
| TENET PHYSICIAN RESOURCES, | ) | |
| ST. FRANCIS PHYSICIAN NETWORK, | ) | |
| LLC, ST. FRANCIS HOSPITAL, and | ) | |
| TENET HEALTHCARE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING PLAINTIFF ROBERT WEGNER M.D.'S APPLICATION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court is Plaintiff Robert Wegner, M.D.'s Application and Motion for

Temporary Restraining Order and Preliminary Injunction, filed April 11, 2025.  (ECF No. 10.)

Defendants Tenet Physician Resources, St. Francis Physician Network, LLC, St. Francis

Hospital, and Tenet Healthcare Corporation responded on April 15.  (ECF No. 14.)  The Court

held a status conference on April 16 (ECF No. 15), at which it set a schedule for additional

briefing, particularly as to Wegner's standing to seek extraordinary relief in the form of a

temporary restraining order or preliminary injunction.  Consistent with that schedule, Wegner

filed his reply to Defendants' response on April 23 (ECF No. 19)[1] and Defendants filed their sur-

---

[1] Wegner filed a Motion for Leave to File Excess Pages two minutes before filing his
reply.  (ECF No. 18.)  Under Local Rule 7.2(e), "[u]nless otherwise ordered by the Court,
memoranda in support and in opposition to motions shall not exceed 20 pages in length, and
reply memoranda, if permitted, shall not exceed 5 pages in length."  In the motion for excess
pages, Wegner asserts that, "[d]ue to the numerous issues raised in Defendants' Response in
Opposition, Plaintiff can only adequately reply to Defendants' contentions through argument in
excess of the page limit."  (Id. at PageID 358.)  Although Wegner did not specify how many

reply on April 28 (ECF No. 23).  In addition to the additional briefing, the Court set the matter

for an additional hearing to be held, if necessary, on May 5, 2025.[2]

For the following reasons, the Court determines that the hearing is unnecessary, and

Plaintiff's Motion for extraordinary relief is **DENIED**.

## BACKGROUND

On April 7, 2025, Wegner filed a Complaint alleging that he was improperly terminated

from his roles as the Program Director of the Metabolic and Bariatric Surgery Accreditation and

Quality Improvement Program ("MBSAQIP") at St. Francis Hospital, and its only credentialed

bariatric surgeon.  According to the Complaint, Wegner served as the MBSAQIP Program

Director at St. Francis from August 2010 until he was wrongfully terminated in early 2025.

(ECF No. 1 at PageID 2–3.)  Before his termination, Wegner performed nearly 6,000 bariatric

procedures, and led the creation of a credentialing standard for bariatric privileges that St.

Francis adopted in September 2024.  (Id. at PageID 3.)  Wegner asserts that this new policy

---

additional pages he was seeking, the reply was about eighteen pages long, excluding the caption, signature block, and certificate of service.  (See ECF No. 19.)  The motion for additional pages is excessive and belated.  First, although the Court understands Plaintiff's desire to be thorough in his reply, at the April 16 hearing the undersigned informed the Parties that she wanted to allow them "a little bit of time to brief this standing issue."  (ECF No. 20 at PageID 426.)  Moreover, Defendants' response that provoked the need for additional pages was only nine pages, half as long as Wegner's reply.  Beyond that, by filing the lengthy reply at essentially the same time as filing the request for additional pages and on the night the reply was due, Wegner did not provide the Court with any time to consider the motion.  Although the Court reluctantly **GRANTS** the Motion for Leave to File Excess Pages, in the future, absent a timely filed—and granted— motion, the Court will only consider argument contained within the page limitations detailed in the Local Rules.

[2] The Court informed the Parties that if it determined, based on those additional filings, "that there's no standing, then that hearing would be canceled."  (ECF No. 20 at PageID 427.)  Given the conclusion that Wegner lacks standing, the hearing was canceled.

"mandated a completed bariatric fellowship, submission of a case log, and a formal letter of competency, aligning the hospital's requirements with national standards." (Id. at PageID 4.)

In June 2022, Wegner and St. Francis Physician Network, LLC, executed a five-year Physician Employment Agreement ("PEA") and Directorship Agreement, which govern the terms of Wegner's employment. (Id.) Wegner alleges that, "at some point, Defendants desired to renegotiate the PEA to make the ongoing operation of [his] practice to be more profitable for Defendants," and proposed eliminating his base salary and other compensation and tying his compensation solely to his productivity. (Id. at PageID 5–6.) Wegner declined the request to renegotiate his contract. (Id. at PageID 6.) According to Wegner, following his refusal to renegotiate the PEA, Defendants "began a campaign of threats and pressure designed to force him back to the negotiating table or force him to resign so Defendants could make more profitable arrangements with another physician." (Id.)

Ultimately, on February 28, 2025, Defendants provided Wegner with a written notice of its intent to terminate the PEA without cause, giving him the requisite ninety-day notice. (Id. at PageID 7; ECF No. 1-8 at PageID 137.) According to Wegner, during the ninety-day window, Defendants told him that he would be required to continue to perform elective bariatric surgeries and provide emergency care to patients as they directed. (ECF No. 1 at PageID 7.) Although Wegner agreed to continue covering emergency care, he refused to perform elective bariatric surgeries during the ninety-day window, asserting that to have done so would have been illegal and unethical, "without a qualified and credentialed successor and a follow up treatment program which complies with the Hospital's policies, Tennessee Medical Ethics, Federal and State laws." (Id.)

3

In early March, Defendant Tenet Physician Resources and leadership from St. Francis Hospital met, without Wegner, to discuss his replacement and the reassignment of his staff. (Id. at PageID 9.) According to Wegner, at the meeting the Chief Strategy Officer asked whether Wegner's termination was connected to allegations of Medicare fraud, sexual harassment, or his arrest, apparently conflating Wegner with a different Memphis-based physician who had, in fact, been arrested and indicted on those charges. (Id.) The nurse director at the meeting allegedly stated that she also had heard the same rumors, but did not know their veracity. (Id.) According to Wegner, although multiple attendees at the meeting knew those allegations were false, they did not dispute, correct, or seek clarification of the comments. (Id. at PageID 10.) Wegner asserts that St. Francis's physician coordinator was later contacted by two urologists in private practice in Memphis regarding Wegner's alleged criminal conduct and professional misconduct. (Id.)

Wegner alleges that Defendants moved forward with plans to replace him with Dr. George Woodman, a general surgeon, who lacked the bariatric fellowship training required under the credentialing policy that St. Francis adopted in September 2024. (Id. at PageID 11.) Although Wegner said that he offered "to stay on during a transition period to help recruit and onboard a credentialed replacement," he was not consulted about Woodman's hire, a failure that he asserts violates the PEA. (Id.)

After Wegner was told on March 17, 2025, that Woodman would be taking over the program, he objected in person and in writing, based on his contention that Woodman did not meet the credentialing policy. (Id.) Defendants ignored those objections and, on March 20, issued a new termination letter to Wegner, making his termination "for cause" and immediate.

(Id.)  Wegner alleges that the for-cause termination violated the PEA in several ways.  (Id. at

PageID 12–14.)

In the wake of his termination, Wegner alleges that "Defendants have taken no steps to

clarify Dr. Wegner's status, safeguard patients, or enact a lawful transition plan."  (Id. at PageID

15.)  As a result, he "continued receiving consult requests and protected patient information,

even though he had no legal authority, privileges, or malpractice coverage."  (Id.)  Wegner

asserts that his "abrupt termination and the hospital's silence left patients confused, uncared for,

and unaware that their surgeon had been removed.  Many patients were deprived of continuity of

care, and several presented to the ER in distress, unaware that Dr. Wegner was no longer

available to treat them."  (Id. at PageID 19.)  Ultimately, Wegner asserts that, based on

Defendants' actions, he "remains professionally isolated, emotionally distressed, and unable to

resume his practice," and "[t]he damage to his career, reputation, and mental health is ongoing

and irreparable without judicial relief."  (Id. at PageID 20.)  He asserts that "[h]is losses include

not just income and patient access, but also his standing in the surgical and medical

community—harms that cannot be undone by money alone."  (Id.)

Wegner's Complaint contains five counts: retaliation under EMTALA; breach of

contract; violation of Tennessee Public Protection Act ("TPPA"); tortious interference with

business expectancy; and defamation.  (Id. at PageID 20–24.)

In the Motion, Wegner asserts that he is seeking "a temporary restraining order and

preliminary injunction to prevent the continued disruption of patient care, violation of medical

supervision laws, and irreparable harm to his livelihood and professional reputation."  (ECF No.

10-5 at PageID 306.)  To that end, he seeks the entry of a preliminary injunction granting

extraordinary relief requiring that St. Francis: (1) halt all elective and transferred bariatric cases

until a credentialed, fellowship-trained bariatric surgeon is in place; (2) cease all post-operative

care by unsupervised or unqualified personnel, including nurse practitioners operating without

lawful physician oversight; (3) issue a formal, institution-wide communication clarifying that

Wegner is no longer practicing at St. Francis and must not be consulted under any circumstances;

(4) develop and disclose a transition-of-care plan, including the current supervising physician

responsible for all bariatric patients; (5) acknowledge and confirm compliance with the March 25

litigation hold notice.  (Id. at PageID 335–36.)

In their response, Defendants assert that there is no logical connection between the

complaints asserted in the Motion and the relief that Wegner seeks.  Defendants assert that

**"[i]mposition of an order addressing any of these five (5) items above will not reinstate**

**Plaintiff's employment, nor will they bear any specific connection or redress any injury**

**allegedly suffered as a result of Plaintiff's asserted claims of EMTALA retaliation, breach**

**of contract, TPPA violations, or tortious interference with business expectancy."**  (ECF No.

23 at PageID 462.)  Ultimately, Defendants argue that Wegner "is essentially aggrandizing

natural circumstances that flow from the lawful termination of his employment in a desperate

attempt to impose operational burdens on his former employer and Saint Francis Hospital."  (Id.

at PageID 463.)

According to Defendants, this disconnect illustrates an even more fundamental issue that

warrants denying Wegner's Motion: he lacks standing to be granted the extraordinary relief that

he seeks.

## APPLICABLE LAW

"Standing to pursue a claim is a threshold question in every federal case.  McGlone v.

Bell, 681 F.3d 718, 728 (6th Cir. 2012) (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)).  "The

6

burden of establishing standing is on the party seeking federal court action." Rosen v. Tenn.

Comm'r of Fin. & Admin., 288 F.3d 918, 927 (6th Cir. 2002). "A plaintiff must meet Article III

and prudential standing requirements to proceed with his case." Id. (quoting Wuliger v. Mfrs.

Life Ins. Co., 567 F.3d 787, 793 (6th Cir. 2009)). When considering a motion for preliminary

injunction, the "court should normally evaluate standing 'under the heightened standard for

evaluating a motion for summary judgment.'" Waskul v. Washtenaw Cnty. Cmty. Mental

Health, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quoting Food & Water Watch, Inc. v. Vilsack,

808 F.3d 905, 912 (D.C. Cir. 2015)). At the same time, "an inability to establish a substantial

likelihood of standing requires denial of the motion for preliminary injunction, not dismissal of

the case." Id. (quoting Food & Water Watch, 808 F.3d at 912).

As to Article III standing, "[a] plaintiff seeking to invoke the jurisdiction of the federal

courts 'must satisfy the threshold requirement imposed by Article III of the Constitution by

alleging an actual case or controversy.'" Hange v. City of Mansfield, Ohio, 257 F. App'x 887,

891 (6th Cir. 2007) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)). The

"irreducible constitutional minimum" of standing requires a plaintiff to show he "(1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that

is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330,

338 (2016), as revised (May 24, 2016) (citations omitted). "'Injury in fact' is a harm suffered by

the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.'

'Causation' is 'a fairly traceable connection between the plaintiff's injury and the complained-of

conduct of the defendant.' 'Redressability' is 'a likelihood that the requested relief will redress

the alleged injury.'" Hange, 257 F. App'x at 891 (quoting ACLU v. Nat'l Sec. Agency, 493 F.3d

644, 659 (6th Cir. 2007)).

Meanwhile, "[t]he prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." Hidden Vill., LLC v. City of Lakewood, Ohio, 734 F.3d 519, 527 (6th Cir. 2013) (quoting Warth v. Seldin, 422 U.S. 490, 509 (1975)).  To establish prudential standing, "(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." McGlone, 681 F.3d at 729 (quoting Wuliger, 567 F.3d at 793).  "When a claimant challenges the defendant's actions with respect to third parties . . ., it is 'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." Arizona v. Biden, 40 F.4th 375, 383 (6th Cir. 2022) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 562 (1992)).

## ANALYSIS

Wegner's Motion for extraordinary relief fails because he lacks both Article III and prudential standing to be granted the relief he seeks.  Wegner's Motion, and much of his reply, does not focus on standing-related arguments, but instead on the factors courts evaluate when determining whether a party is entitled to extraordinary relief.[3]  Because Wegner does not have

---

[3] There are four factors the Court must balance when assessing whether to issue a preliminary injunction: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." State Sys., LLC v. Harris, No. 2:22-cv-2528-SHL-atc, 2022 WL 3970061, at *2 (W.D. Tenn. Aug. 26, 2022) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).  The Court need not explicitly consider each of these factors if one is dispositive. Id. (quoting Certified Restoration, 511 F.3d at 542).

standing to be granted the relief he seeks, either for himself or as to third parties, the Court does

not reach those arguments and addresses only those pertaining to standing.

Defendants assert that Wegner has failed to demonstrate any of the three elements that

would establish Article III standing, beginning with the fact that none of the five forms of relief

he seeks in his Motion have "any direct impact on [him] or patients whatsoever, as each of them

relate to operations of the physician practice and/or the hospital and thus only directly impact

staff since the patients can choose their own providers with another physician practice and/or

hospital." (ECF No. 14 at PageID 346.) Defendants argue that this failure to establish injury to

himself leads to his "fail[ure] to connect the dots" between Defendants' conduct and the injury.

Finally, Defendants argue that the prospective relief Wegner seeks will not remove any harm he

has suffered, and he has failed to demonstrate that the relief he requests "would in certainty

remove any alleged harm to patients, which is pure conjecture." (Id. at PageID 347.)

For his part, Wegner asserts that the harms to his reputation establish a basis for standing

and the injunction he is seeking "will in part protect his reputation and allow him to direct his

patients' care and transition to a new care giver." (ECF No. 19 at PageID 365.) He further

argues that he "is entitled to assert the rights of his patients under the doctrine of third-party

standing," based on the fact that he has "close relationship" with those patients and the patients

"face[] obstacles to asserting their own rights." (Id. (citing Kowalski v. Tesmer, 543 U.S. 125,

129–30 (2004); Singleton v. Wulff, 428 U.S. 106, 114–15 (1976)).

As to the issues related to redressability, Wegner asserts that the requested injunctive

relief targets distinct, continuing harm to him. (Id. at PageID 366.) Wegner essentially appears

to be asserting that he is synonymous with St. Francis's bariatric surgery unit and that if the

Court fails to implement the restrictions he seeks, it will continue to reflect poorly upon him and

harm his reputation.  He asserts that, "[w]ithout relief, [he] remains publicly and professionally

entangled in unresolved failures created by Defendants, deepening reputational damage and

interfering with his ability to resume practice or restore standing." (Id. at PageID 367.)

As to injury in fact, the first element of standing, Wegner asserts that the sort of harms he

has allegedly suffered—"reputational, professional, and clinical"—are sufficient.  But the lone

case from the Sixth Circuit that he relies upon to make that argument is distinguishable.

Wegner cites Parsons v. U.S. Dep't of Justice, 801 F.3d 701, 711–12 (6th Cir. 2015), for

the proposition that "[r]eputational injury . . . is sufficient to establish an injury in fact."  That

case dealt with allegations that a group of fans of the Insane Clown Posse, commonly known as

"Juggalos," had their First Amendment rights violated by state and local law enforcement after

the Juggalos were identified as a criminal gang.  The court noted that reputational injury was

sufficient to establish an injury in fact, but explained that "[t]he Juggalos' allegations that their

First Amendment rights are being chilled are accompanied by allegations of concrete

reputational injuries resulting in allegedly improper stops, detentions, interrogations, searches,

denial of employment, and interference with contractual relations." Id. at 712.

That sort of concrete reputational injury is not present here, where Wegner alleges that

"[t]he circumstances of his termination and removal from all contact with his patients and

colleagues will lead most reasonable people to conclude that Defendants must have been acting

to 'protect the Hospital and/or his patients' from misconduct." (ECF No. 19 at PageID 364.)

This speculative alleged injury is quite different than the concrete constitutional infringements

alleged in Parsons.  The absence of any injury in fact also necessarily eliminates the possibility

that it could fairly be traced to the conduct of Defendants.

10

But even assuming that Wegner has established that he has suffered an injury in fact that is fairly traceable to the challenged conduct of Defendants, there is a very small likelihood that any such harm is likely to be redressed by a favorable judicial decision, the last requirement to establish Article III standing.  Because "standing is not dispensed in gross," a party "must demonstrate standing for each claim he seeks to press" and "for each form of relief sought." Waskul v. Washtenaw Cnty. Cmty. Mental Health, 900 F.3d 250, 253 (6th Cir. 2018) (citations omitted).  Wegner's failure to establish standing for the forms of relief he seeks is fatal to his quest for injunctive relief.

The fundamental undisputed fact that undermines almost all of the relief Wegner seeks in his motion is that he is no longer employed by St. Francis and has not been since his termination on March 20, 2025.[4]  Whether, as Wegner asserts in his underlying Complaint, he was wrongfully terminated, defamed, retaliated against, had his business expectancies tortiously interfered with, or whether there are issues with the non-compete clause in the PEA, are all tied to the circumstances surrounding his termination.  Wegner may, in fact, be able to substantiate those claims in this litigation.  But none of the relief he seeks in his Motion gets at any of the underlying harms associated with those claims.  Ultimately, the remedies Wegner seeks have "no ameliorative effects on [his] injury," undermining his claims that he has standing.  Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin., 13 F.4th 531, 540 (6th Cir. 2021).

---

[4] Wegner asserts that he has been contacted multiple times by St. Francis employees who were unaware that he was no longer affiliated with the hospital.  (See ECF No. 10-5 at PageID 320–22.)  It is unclear how this alleged failure by St. Francis to communicate to its staff that Wegner was no longer an employee of Defendants could function to harm Wegner, as is discussed in more detail below.  Whether, as Wegner alleges, St. Francis was insufficiently staffed after his departure is a matter for St. Francis—and its patients—to determine.

11

Wegner first seeks to have St. Francis "halt all elective and transferred bariatric cases until a credentialed, fellowship-trained bariatric surgeon is in place." (ECF No. 10-5 at PageID 306.) In his reply, Wegner subtly recasts the relief to "[p]rohibit Defendant from misrepresenting the availability or safety of bariatric surgical services as St. Francis Hospital." (ECF No. 19 at PageID 366.)[5]

The connection that Wegner once had to St. Francis's bariatric surgery program is insufficient to warrant this relief. Because the ongoing operation of a bariatric unit, or representations related to its work, are too tenuously connected to Wegner, granting this relief would not redress any of the harm he alleges.

Similarly, none of the harms Wegner alleges he suffered would be redressed by an injunction that orders St. Francis to "cease all post-operative care by unsupervised or unqualified personnel, including nurse practitioners operating without lawful physician oversight." As a starting point, the vague nature of the terms in this request would make enforcement nigh impossible and, in any event, it is not clear that St. Francis is not already adhering to this request.

Wegner implies that, since his departure, St. Francis has failed to abide by the credentialing policy it adopted at his direction, as well as the standards offered by the American College of Surgeons' MBSAQIP requirements. (See ECF No. 10-5 at PageID 307–08.) But

---

[5] Wegner appears to assert other requests for relief in his reply that differ in not-so-subtle ways from the relief sought in his original Motion. So, he also seeks to "[e]njoin[] retaliation against Dr. Wegner for engaging in protected conduct under EMTALA or Tennessee law," and to "prevent[] enforcement of contractual provisions that would bar Dr. Wegner from engaging in protected advocacy or communicating with patients regarding continuity of care." (ECF No. 19 at PageID 366–67.) To the extent Wegner seeks alternative forms of relief in his reply brief, the Court does not entertain them. See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) ("reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration") (quoting Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

according to Defendants, contrary to Wegner's contentions, they have "continued to provide care in compliance with the recognized standards of acceptable professional practice," and "[a]lthough [Wegner] argues that he personally has concerns with the lack of a fellowship-trained bariatric surgeon on staff, this particular credential is not required for an otherwise qualified gastroenterologist or surgeon to perform bariatric surgeries and follow-up care." (ECF No. 23 at PageID 468.) Even if Defendants were not already providing the sort of relief that Wegner is requesting, to order them to do so with an injunction would once again not redress any of the harm Wegner alleges he has suffered. As a result, Wegner does not have Article III standing to seek this relief.

The same analysis applies to Wegner's request that St. Francis be required to "develop and disclose a transition-of-care plan, including the current supervising physician responsible for all bariatric patients." (ECF No. 10-5 at PageID 336.) This attempt at micromanaging St. Francis's bariatric department after Wegner's termination also would not address any of the harm suffered by Wegner. This lack of redressability means that he lacks standing to assert these claims.

Although the reasons are different, Wegner also lacks standing to obtain the two remaining forms of relief he seeks in his Motion, that is to direct Defendants to "issue a formal, institution-wide communication clarifying that Dr. Wegner is no longer practicing at St. Francis and must not be consulted under any circumstances," and to "acknowledge and confirm compliance with the March 25 litigation hold notice."[6]

---

[6] The last two forms of relief Wegner seeks highlight a separate problem with his request for extraordinary relief: even if Wegner did have standing, he likely would not be entitled to a preliminary injunction based on the factors the Court must balance when assessing whether to issue a preliminary injunction. See supra n.3. Not only has Wegner not shown a strong likelihood of success on the merits, but there is also no suggestion that he would suffer

As noted above, Wegner detailed multiple instances in which St. Francis's staff communicated with him after he was terminated, apparently unaware that he was no longer affiliated with the hospital. Those communications, which Wegner seems to seek to curtail through his formal, institution wide communication, are not the sort of injury in fact that warrants the extraordinary remedy of injunctive relief. Fielding the occasional phone call from the St. Francis staff and having to inform them that he is no longer affiliated with the hospital does not amount to an injury in fact that would warrant putting in place mechanisms that would help ensure those calls are not made.

Similarly, any injury that could be derived from a failure of St. Francis to acknowledge and confirm that it is complying with the litigation hold notice is not the sort of injury that warrants injunctive relief. Even more, to the extent it is possible that Wegner would suffer any injury absent St. Francis's compliance with the litigation hold, that is the sort of speculative injury that is an inappropriate basis for a preliminary injunction. After all, preliminary injunctions "will not be issued simply to prevent the possibility of some remote future injury," as "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citations omitted). Given the foregoing, Wegner does

---

irreparable injury absent the injunction, as, contrary to his assertions, his damages would likely be satisfied by a monetary award. (See Overstreet v. Lexington–Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir.2002) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.")

not have standing to assert an entitlement to the relief he seeks related to the litigation hold

notice.[7]

Wegner's failure to establish Article III standing is fatal to his claims for injunctive relief.

Although the Court need not reach his arguments related to prudential, or third-party, standing,

those arguments fare no better.

The general rule that a party "must assert his own legal rights and interests, and cannot

rest his claim to relief on the legal rights or interests of third parties," is not absolute, as "there

may be circumstances where it is necessary to grant a third party standing to assert the rights of

another." Kowalski, 543 U.S. at 129.  To invoke the exception, a party must show both that he

has a "'close' relationship with the person who possesses the right," and that there was

"'hindrance' to the possessor's ability to protect his own interests." Id. (citing Powers v. Ohio,

499 U.S. 400, 411 (1991).

Wegner asserts that he has met both elements, as he "maintained direct, ongoing

relationships with his bariatric patients, many of whom require long-term post-operative care,"

and those patients' "ability to challenge institutional credentialing decisions or understand why

they no longer have access to qualified care is severely limited."  (ECF No. 19 at PageID 365.)

Defendants counter that, unlike the cases Wegner relies upon, "[t]here are no constitutional

rights at issue here and there is no limitation on the ability of Plaintiff's current or former

---

[7] Ultimately, even if these last two forms of relief that Wegner seeks were enough to
establish the "irreducible constitutional minimum" of Article III standing, they would not bestow
standing upon him for his other claims, as "[a] plaintiff cannot sidestep Article III's requirements
by combining a request for injunctive relief for which he has standing with a request for
injunctive relief for which he lacks standing."  Salazar v. Buono, 559 U.S. 700, 731 (2010) (J.
Scalia, concurring).

patients' [to] 'vindicate their rights' to seek medical treatment elsewhere." (ECF No. 23 at

PageID 465.) Defendants have the better side of the argument.

Wegner asserts that "[p]hysicians may sue on behalf of their patients if they allege

concrete injuries of their own and the usual requirements for third-party standing are satisfied."

(ECF No. 19 at PageID 366 (quoting Ass'n of Am. Physicians & Surgeons v. FDA, 13 F.4th

531, 537 (6th Cir. 2021)). Wegner's inability to assert a concrete injury of his own defeats

third-party standing, as described above, and undermines his reliance on that case.

Wegner also cited City & County of San Francisco v. Azar, 411 F. Supp. 3d 1001 (N.D.

Cal. 2019), at the hearing and in his reply for the proposition that "medical patients often cannot

vindicate their rights without assistance from the physicians who treat them." (ECF No. 19 at

PageID 365.) But Wegner's reliance on that out-of-circuit case is inapposite for multiple

reasons.

First, it is unclear how or why patients would or should have the "ability to challenge

institutional credentialing decisions" at St. Francis, as Wegner suggests. If patients are unhappy

with the institutional credentialing decisions at St. Francis, they can choose to be treated

elsewhere, including by Wegner if he gains employment at another medical facility or opens his

own.

Moreover, the rights Wegner is assigning to these patients bear no resemblance to those

at issue in City & County of San Francisco. The Supreme Court has acknowledged that it has

"been quite forgiving" with the prudential standing criteria in certain circumstances, such as

"[w]ithin the context of the First Amendment." Kowalski, 543 U.S. at 130. Those sorts of

constitutional concerns were similar to the ones at issue in City & County of San Francisco.

There, the court found that the physicians who were "raising free speech, equal protection, and

16

due process claims on behalf of their LGBTQ and abortion-seeking patients" had standing to do

so.  Because the same cannot be said of the sort of nebulous rights that Wegner is asserting on

behalf of his former patients, he has failed to establish third-party standing to assert claims on

their behalf.

### CONCLUSION

Based on the foregoing, Wegner's Motion for Temporary Restraining Order and

Preliminary Injunction are **DENIED**, based on his lack of standing.

As noted above, Wegner's lack of standing to obtain the extraordinary relief sought in the

Motion does not require dismissal of his case.  This is not only because the relief sought in his

Complaint varies from the relief sought in the Motion, but also because his inability to establish

a substantial likelihood of standing only warrants a denial of the motion for preliminary

injunction.  Waskul, 900 F.3d at 255 (citation omitted).  To that end, the Court will enter a

separate order setting a Scheduling Conference in this matter.

**IT IS SO ORDERED,** this 5th day of May, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

17