## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT WEGNER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02389-SHL-atc |
| | ) | |
| TENET PHYSICIAN RESOURCES, | ) | |
| ST. FRANCIS PHYSICIAN NETWORK, | ) | |
| LLC, ST. FRANCIS HOSPITAL, and | ) | |
| TENET HEALTHCARE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING PLAINTIFF ROBERT WEGNER, M.D.'S MOTION FOR RECONSIDERATION

Before the Court is Plaintiff Robert Wegner, M.D.'s Motion for Reconsideration of the Court's Order Denying Temporary Restraining Order and Preliminary Injunctive Relieve Based on Newly Discovered Evidence, filed December 17, 2025.  (ECF No. 33.)  Defendants Tenet Physician Resources, St. Francis Physician Network, LLC, St. Francis Hospital, and Tenet Healthcare Corporation responded on January 2.  (ECF No. 34.)  The Motion seeks reconsideration of the Court's May 5, 2025 Order that denied Wegner's Application and Motion for Temporary Restraining Order and Preliminary Injunction, which was based on the fact that Wegner lacked both Article III and prudential standing to bring his claims for extraordinary relief.  (See ECF No. 28.)

According to the Motion, since that Order was entered, new facts have emerged that did not exist at the time of briefing or argument that have rendered "the factual assumptions underlying the Court's standing determination . . . demonstrably inaccurate, and continued denial of relief would result in ongoing harm that the Court did not have occasion to consider."  (ECF

No. 33 at PageID 518.)  Those new facts are associated with a phone call Wegner says he

received on December 6, 2025.  Although that call did, in fact, occur after the Court denied

Wegner's Motion for Temporary Restraining Order and Preliminary Injunction, it in large part

mirrored the previous incidents that Wegner complained of that formed the basis for the Court's

initial denial of his request for extraordinary relief.  Because the "new evidence" Wegner cites

does not alter the Court's earlier conclusion that he lacks standing that would entitle him to the

extraordinary relief he seeks both in his original motion and the slightly modified relief he seeks

in the motion to reconsider, and for the reasons outlined in more detail below, the Motion is

**DENIED**.

## <u>LEGAL STANDARD</u>

"District courts have authority both under common law and Rule 54(b) to reconsider

interlocutory orders and to reopen any part of a case before entry of final judgment."  <u>Rodriguez</u>

<u>v. Tenn. Laborers Health & Welfare Fund</u>, 89 F. App'x 949, 959 (6th Cir. 2004).  Under Rule

54(b), "any order or other decision, however designated, that adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties does not end the action as to any of

the claims or parties and may be revised at any time before the entry of a judgment adjudicating

all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Courts applying

the Rule "[t]raditionally . . . find justification for reconsidering interlocutory orders when there is

(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct

a clear error or prevent manifest injustice."  <u>Rodriguez</u>, 89 F. App'x at 959.  "[S]ound judicial

administration does not require that Rule 54(b) requests be granted routinely."  <u>Curtiss-Wright</u>

<u>Corp. v. Gen. Elec. Co.</u>, 446 U.S. 1, 10 (1980).  "[A] motion to reconsider should not be used to

re-litigate issues previously considered." Am. Marietta Corp. v. Essroc Cement Corp., 59 F.

App'x 668, 671 (6th Cir. 2003) (evaluating a motion to reconsider under Rule 59(e)).

## ANALYSIS

Wegner does not base his request for reconsideration on an intervening change of

controlling law or the need to correct a clear error or prevent a manifest injustice.  Instead, he

suggests that the new evidence reveals that he was right about his earlier assertions, namely that

St. Francis "had no qualified backup or protocol in place months after his termination and loss of

privileges and malpractice coverage," and that the recent developments reveal the "Defendants

as liars."  (ECF No. 33-2 at PageID 523.)  Wegner points to the December 6 call in which "an

operator at the St. Francis Hospital transfer center [] called [him] regarding a life-threatening

bariatric emergency involving a patient seeking transfer for care."  (Id.)  He cites the phone call

as evidence of "ongoing conduct by Defendants that directly contradicts the factual assumptions

underlying the Court's earlier ruling," which "undermines the factual foundation of the Court's

standing analysis."  (Id. at PageID 527.)  In so doing, he misreads the Court's Order that denied

him injunctive relief.

Wegner accurately states that the Court determined that he did not have standing based

on the fact that he "had not suffered an injury in fact and that the requested relief would not

redress any concrete harm to him."  (Id. at PageID 521.)  But he then incorrectly asserts that the

Court's "conclusion rested on a factual premise the Court accepted as true, namely, that St.

Francis Hospital had independent bariatric emergency coverage and 'operations  . . . in place'

such that it did not rely on Dr. Wegner after his termination."  (Id.)  That was not, however, what

formed the basis for the Court's determination.  In fact, although the Court acknowledged

Defendants' assertion that they "continued to provide care in compliance with the recognized

standards of acceptable professional practice," it explicitly explained that "[e]ven if Defendants were not already providing the sort of relief that Wegner is requesting, to order them to do so with an injunction would once again not redress any of the harm Wegner alleges he has suffered." (ECF No. 28 at PageID 494.)  As for whether St. Francis is sufficiently staffed, the Court previously explained that "is a matter for St. Francis—and its patients—to determine." (ECF No. 28 at PageID 492 n.4.)[1]

As Defendants point out, the Court's denial of Wegner's motion for injunctive relief did not hinge on whether Defendants had sufficient operations in place to replace the work Wegner did, but rather on the fact that "[t]he fundamental undisputed fact that undermines almost all of the relief Wegner seeks in his Motion is that he is no longer employed by St. Francis and has not been since his termination on March 20, 2025." (Id. at PageID 491–92.)  The fact that Wegner received a single phone call on December 6, 2025—the nature of which Defendants' challenge— is, in fact, precisely what the Court previously determined did not establish Wegner's standing. In its previous Order, the Court explained that "[f]ielding the occasional phone call from the St. Francis staff and having to inform them that he is no longer affiliated with the hospital does not amount to an injury in fact that would warrant putting in place mechanisms that would help ensure those calls are not made." (Id. at PageID 495.)

Wegner relies on the phone call to once again argue that he is being harmed by the fact that Defendants have "no one to handle bariatric surgeries, and he is being asked to handle Tenet bariatric patients without malpractice insurance, payment, or support," and that doing so "would

---

[1] Wegner also cites, and attaches to his Motion, an undated text message exchange between him and "general surgery group leader Dr. Mel Payne," which "undermine[s] any claim that general surgery could provide bariatric emergency coverage." (ECF No. 33-2 at PageID 528; ECF No. 33-1 at PageID 520.)  Again, whether St. Francis was qualified to treat its patients is a matter between the provider and its patients, and does not implicate Wegner's interests.

subject Plaintiff to risks professionally, such as being reported to licensing boards, and he has been already been pressured by Defendant to engage in such actions, which would place his license at risk." (ECF No. 33-2 at PageID 530.) He asserts that the such calls place him "in an untenable position, forcing [him] to refuse involvement in emergency care despite being treated operationally as an on-call physician." (ECF No. 33-3 at PageID 536.) According to Wegner, "[e]ach emergency call places [him] at risk of ethical, legal, and reputational harm that cannot be remedied by damages." (ECF No. 33-2 at PageID 532.) But Wegner fails to point to what ethical, legal, or reputational harms could arise from his response to the December 6 call where he explained that he "was no longer employed by St. Francis Hospital, did not have hospital privileges, and did not have medical malpractice insurance coverage, and therefore could not accept or participate in the care of the patient." (ECF No. 33-3 at PageID 535.)

Although the single phone call from December that Wegner cites is, in fact, "new evidence," having occurred since the Court's earlier Order was entered, because it is the same type of evidence that the Court previously considered, it does not warrant reconsidering the Court's earlier decision pursuant to Rule 54(b). Accordingly, Wegner's Motion is **DENIED**.

**IT IS SO ORDERED,** this 17th day of February, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE